## Joseph A. Fogg *vs.* Inhabitants of Nahant.
## Frederick May *vs.* Same.

If a horse which a traveller is driving with due care on a highway throws his tail over the rein so as to free himself for a considerable time from any efficient control or guidance, and, while so freed, comes upon a defect in the way, whereby an injury is occasioned, the town is not liable for the injury, although at the moment thereof the rein is disengaged from the horse's tail.

Two actions of tort; for personal injuries sustained by the plaintiff Fogg, and for injury of a carriage owned by the plaintiff May, alleged to have been caused by a defect in a highway in the town of Nahant which the defendants were bound to keep in repair.

These actions were tried together in the superior court, before *Putnam*, J., who refused a request of the defendants for a ruling that the evidence was not sufficient to support them, and, after verdicts for the plaintiffs, reported the cases, with all the evidence, to this court, new trials to be granted if the ruling requested should have been given. Those portions of the evidence which are material to the decision are stated in the opinion.

*D. Peabody*, for the defendants.

*G. W. Phillips*, for the plaintiffs.

HOAR, J. Upon the report in these actions, which depend substantially upon the same facts, the court are called upon to determine whether the evidence will, as matter of law, support the verdicts for the plaintiffs. The rule which applies to such a question has been recently stated in the case of *Forsyth* v. *Hooper*, 11 Allen, 419. It is not a question of the weight of evidence ; but whether, upon the points material to the mainte- nance of the action, there was any evidence which tended to support the plaintiffs' case.

The place where the accident happened was at the foot of a hill, where the road, which was narrow, made a sharp curve, and with a gutter and stones near to the travelled path. Whether the road, by reason of its steepness, narrowness, and the turn which it made, and the position and depth of the gutter, was reasonably safe and convenient for travellers, or whether persons using due care would be exposed to danger in passing over it, we think was properly left to the jury as a question of fact, and that their finding upon it is not open for revision upon this report. There was certainly some evidence, proper for the consideration of the jury, which tended to support the plaintiffs' case.

But, upon another point in the case, after mature and careful consideration, and with all the aid which the very able arguments of counsel have afforded us, we are unable to satisfy ourselves that the verdict is consistent with the law applicable to the evidence.

The liability of the town for an injury to a traveller, occasioned by a defect or want of repair in a highway, depends upon proof

that the defect caused the injury. If a want of due care on the part of the person injured contribute to cause the injury, he cannot recover. And if, without fault or negligence on his part, his horses have escaped from his control, and have run away or become wholly unmanageable, so that no care can be exercised by him in respect to them; and this condition of things is not produced by a defect in the way; the town is not responsible for what may happen in consequence, even if the carriage upsets at a place where the way is defective.

By the uncontradicted evidence offered by the plaintiffs, it appeared that, at the time the accident happened, which it is alleged was caused by the defect in the way, the horses were, and for some time had been, out of the control of their driver; and there was nothing in the evidence to show that, but for this fact, the accident would have happened.

The plaintiffs' first witness testified that one of the horses driven at the time of the accident had the habit of throwing his tail over the rein, and, when doing it, would make a little start and quicken his pace a short distance, and then slacken off and relieve the rein. The plaintiff Fogg, who was also examined as a witness, made the same statement in substance, and said that he usually let the horse take his own course when he threw his tail over the rein. Both of these witnesses testified, in effect, that at the time of the accident the horse threw his tail over the rein as they were approaching the top of the hill; that the driver stooped forward and took hold of the tail, and tried to lift it and extricate the rein, but in so doing bent down the dasher of the carriage so that he was obliged to desist, and did not get the rein out; that the horses quickened their pace, the one with the rein under his tail galloping; that they went over the top of the hill, and about twenty rods down on the other side, to the point where the road turned to the right, the driver and the plaintiff Fogg both pulling on the right hand rein, in order to turn the horses round the curve; but that, in spite of their united efforts, the horses bore to the left, the wheels went into the gutter, and the carriage upset. One of them said that he thought the rein was not under the tail when they tipped over, but could no'

swear it was not; and that there was no effort to extricate the rein after the dasher broke. Assuming, therefore, as the plaintiffs' counsel contends, that the horses, though spirited, were safe and proper horses to drive, it appears that by misfortune they were, at the time when the accident happened, entirely freed from any efficient control or guidance of their driver; that in this condition they went at a rapid rate and for a considerable distance, down a steep and narrow road; that the attempt to regain the mastery of the rein was unavailing; and that the efforts of two men were not sufficient to keep them in the path. Whether, at the moment of the upset, the rein had become freed from the horse's tail, was immaterial. There was no proof or pretence that the driver had regained his control of it in season to obtain any control of the horses, or to have any power to guide them.

These facts bring the case within the rule laid down in *Davis* v. *Dudley*, 4 Allen, 557, which we have had had recently occasion to reconsider and apply in *Titus* v. *Northbridge*, 97 Mass. 258, and *Horton* v. *Taunton*, Ib. 266, note.        *New trials granted.*