MICHAEL J. IGO *vs.* CITY OF CAMBRIDGE.

SAME *vs.* L. D. WILLCUTT AND SONS COMPANY.

Middlesex.   March 7, 8, 1911. — May 17, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Way*, Defects in highway.   *Negligence*, In use of highway, Proximate cause, Plaintiff's due care.

In an action against a city under R. L. c. 51, § 18, for personal injuries alleged to have been sustained by reason of a defect in a highway of the defendant, it appeared that the plaintiff in the exercise of due care was driving four horses

attached to a heavily loaded wagon, when the horses were frightened by a portable engine maintained in a temporary shelter on the highway for use in the erection of a building, which was being operated negligently by the engineer of the building contractor, that the horses became uncontrollable and turned one of the wheels of the wagon into an open trench in the highway, so that the plaintiff was thrown from his seat and sustained the injuries complained of. It further appeared that the trench had been dug by the water department of the defendant, and that, after the defendant had received reasonable notice of its dangerous character, it had been left wholly unguarded without any precautions being taken to warn travellers of the danger. *Held,* that the action could not be maintained because the defect in the highway was not the sole cause of the plaintiff's injuries.

A contractor, who is granted a permit by the proper officers of a city to maintain and operate a portable engine in a temporary shelter upon a highway of the city, which is not closed to public travel, must use reasonable care not to operate the engine in a manner that is likely to frighten horses when being driven near it by travellers on the highway.

In an action against a contractor for personal injuries alleged to have been sustained by reason of the negligence of an engineer of the defendant in suddenly starting a portable engine maintained under a permit from a city in a temporary shelter on a highway of the city, at the moment when the horses driven by the plaintiff were passing near it between the temporary shelter and an open trench, thus causing the horses to become uncontrollable and to turn one of the wheels of the wagon into the trench so that the plaintiff was thrown from his seat and injured, it is no defense that the accident would not have happened if the trench in the highway had not been left by the city open and unguarded.

The driver of four horses attached to a heavily loaded wagon, who in passing through a street of a city sees ahead of him on his right an open trench unguarded and on his left a temporary shelter in which a portable engine is maintained on a portion of the highway for use in the erection of a building, if his horses have not shown signs of fright and there is room in the street for his team to pass safely between the trench and the temporary shelter of the engine, and he has no reason to anticipate that the engineer in charge of the engine will start it up suddenly at the moment that his horses are passing near it, cannot be said as matter of law to be negligent in attempting to drive between the trench and the engine, although while he is doing so the sudden starting of the engine frightens the horses and makes them uncontrollable, so that they turn a wheel of the wagon into the trench and he is thrown from his seat and injured.

Two ACTIONS OF TORT for personal injuries sustained by the plaintiff on December 8, 1908, at about half past nine o'clock in the morning, while he was a traveller upon a public highway in the city of Cambridge, the first action being against that city under R. L. c. 51, § 18, and the second action being against a corporation, carrying on the business of a building contractor, whose engineer was alleged to have caused the injuries by negligently frightening the horses which the plaintiff was driving. Writs dated January 11, 1909.

In the Superior Court the cases were tried together before *Fox,* J. There was evidence that the plaintiff was driving on that part of Brattle Street in the defendant city which connects Harvard Square and Brattle Square; that Brattle Street was a public highway; that the plaintiff was driving four horses attached to a manure wagon containing manure of the weight of about three tons; that he had worked for the same employer for fifteen years and had driven for a number of years the same horses over the same route; that the horses would not run or jump at ordinary noises and that he never had had any trouble with these horses before the accident; that he was familiar with the road, and had driven over the part of Brattle Street where the accident occurred on his way in town between half past six and seven o'clock on the morning of the accident, and that at that time there was no excavation in the street. Later on in the forenoon, returning with his team loaded, he entered Brattle Street, driving his horses at a walk on the right hand or out-bound car track. An out-bound electric car approached him from behind and he swung to his right to get off the track. After this car passed, he continued to drive his horses at a walk along the right hand side of Brattle Street until about twenty feet in front of his two leading horses he saw an excavation in the street some four feet in width and four or five feet in length, next to. the right hand outward car track. The trench was being dug by the water department of the defendant city for the purpose of putting in or repairing a water pipe, and one Shea of the water department was present and was in charge of the work. The plaintiff saw one employee of the water department of the defendant city working in this trench and another employee shovelling the dirt which had been thrown toward the sidewalk. There was no barrier, railing or flag placed or erected around the excavation in the street at the time of the accident, and no one was stationed there whose duty it was to notify travellers of any danger. The dirt from the excavation had been thrown to the right of the trench to one approaching from Harvard Square, and the plaintiff testified that this dirt made the right hand side of the street on which he was travelling impassable for his team. He then swung his horses toward the left hand side of the street, and his leading horses approached to within three or four feet of a temporary

engine house sheltering a portable engine placed there by the defendant company, under a license from the defendant city, which was to be used in the erection of a building being constructed by the defendant company at the corner of Brattle and Boylston Streets, whereupon the engineer started his engine and continued to run it until after the accident, and the horses became frightened and turned sharply to the right. The plaintiff was unable to hold them, and they turned the right hind wheel of the plaintiff's wagon into the hole, causing the plaintiff to fall from the wagon seat, a distance of about eight feet to the ground and to sustain the injuries for which these actions were brought.

The permit given by the defendant city to the defendant company authorized the company to occupy a space in the street six feet in width and eighty feet in length outside the sidewalk or curb and it was within a portion of this space that the defendant company erected its engine house. The excavation was made nearly opposite the engine house. A plank walk two feet in width had been laid by the defendant company as a way for foot passengers outside the space occupied by the company and the engine house projected into the street six feet beyond the sidewalk. The entire space in the street from the plank walk to the opposite curb open to travel by horse drawn vehicles and electric cars at the place of the accident was thirty-one feet. There were two lines of car tracks in this part of Brattle Street, one for outward bound cars and one for inward bound cars from and to Boston.

It appeared in evidence that on the morning of the accident a police officer of the defendant city several hours before the accident notified Shea that this was a bad place and told him not to leave it unguarded. This evidence was admitted for the sole purpose of proving notice to the defendant city of the conditions of the way at the time of the accident.

At the close of the evidence the judge, by consent of counsel, sent the cases to the jury for the assessment of damages only, and the jury assessed the damages in the sum of $1,500 in each case. Thereupon the judge ruled that the plaintiff was not entitled to recover, directed verdicts for the defendants, and reported the cases for determination by this court. By agreement

of counsel as to each case, if the ruling of the judge was right, judgment was to be entered for the defendants; otherwise, judgment was to be entered for the plaintiff in the sum of $1,500 with interest from June 22, 1910.

*S. A. Fuller & H. R. Skinner,* for the plaintiff.

*J. F. Aylward,* (*F. M. Phelan* with him,) for the city of Cambridge.

*C. S. Knowles,* for L. D. Willcutt and Sons Company.

BRALEY, J. If it became necessary for the water department of the defendant city either to lay or to repair a water pipe in the public way over which the plaintiff was driving when injured, the jury could find that to open a trench of the dimensions stated, without taking any precautions to warn travellers of the danger, rendered the street defective and unsafe. *Norwood* v. *Somerville,* 159 Mass. 105. *Torphy* v. *Fall River,* 188 Mass. 310, 313. R. L. c. 51, § 1.

To maintain the action, the plaintiff under R. L. c. 51, § 18, must prove that the defect was the sole cause of his injuries. The city had authorized the defendant company to erect a temporary engine house on a portion of the street nearly opposite the excavation, which narrowed the roadway, and as the plaintiff's team was passing the engineer started the engine. The escaping steam, apparently discharged into the street, so frightened the horses that they began to run, and while uncontrollable the wagon plunged into the trench, when the plaintiff was thrown from his seat to the ground. If the loss of control could have been found to have been only momentary, and instantly would have been regained if the wagon had not come in contact with the defect, the plaintiff would have been entitled to recover, as the city does not contend that he was careless or that it did not have notice of the defect. *Babson* v. *Rockport,* 101 Mass. 93. But, it having been undisputed that the horses were beyond his control when the accident happened and but for their fright the wagon would not have fallen into the trench, the verdict for this defendant was rightly ordered. *Titus* v. *Northbridge,* 97 Mass. 258. *Horton* v. *Taunton,* 97 Mass. 266. *Fogg* v. *Nahant,* 98 Mass. 578; *S. C.* 106 Mass. 278. *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.* 158 Mass. 570, 576. *Feeley* v. *Melrose,* 205 Mass. 329.

The defendant company, outside of the portion occupied by its engine house under the permit, had no exclusive use of the street, which had not been closed to public travel. If permitted for its own convenience and benefit to maintain and operate the engine, yet it knew or could be found to have known that the street was being concurrently used by the public. It is common knowledge that horses are likely to become restive and perhaps unmanageable from fright caused by the hissing sound of emitted steam, and the defendant was required in the operation of the engine to use reasonable care not to frighten passing teams. It was for the jury and not for the court to determine, whether the defendant's engineer, who seems to have had convenient facilities for observation, acted with reasonable care in starting the engine before he ascertained whether a team was passing in such proximity that its operation might imperil the safety of travellers. If the jury found that the engineer was negligent, the defendant was responsible for the accident, which as we have said would not have happened if the horses had not been so frightened as to pass from the plaintiff's control. *Butman* v. *Newton,* 179 Mass. 1.

The plaintiff, whose horses previously had not shown signs of fright, undoubtedly was aware that the trench was on his right, with the engine house on his left, but he also knew that the remaining portion of the street was sufficient in width for his team to pass safely, under visible conditions, and he had no reason to anticipate the defendant's negligence. It could not be ruled as matter of law that he acted carelessly. *Stoliker* v. *Boston,* 204 Mass. 522, 534, and cases cited.

In accordance with the terms of the report, judgment for the defendant is to be entered on the verdict in the first case, but in the second case the plaintiff is to have judgment for the sum of $1,500.

*So ordered.*