OLIVE W. CONARY, administratrix, *vs.* BOSTON AND
MAINE RAILROAD.

Middlesex.    March 23, 1925. — May 21, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Way,* Public: defect in bridge crossing railroad. *Railroad.* *Evidence,*
Relevancy and materiality. *Death.*

A railroad corporation, ordered by a decree of county commissioners to
keep a highway and bridge crossing its railroad in repair, is the "person
by law obliged to repair the" way under G. L. c. 229, § 1, and in its
acts, or neglect to act, in compliance with such decree, is not "engaged
in its business" as a carrier of passengers and goods under § 3 of the
statute, and therefore, in an action for conscious suffering and death
caused by neglect in repairing, or by the maintenance of an unlawful
obstruction in the way, damages should be assessed under § 1 and not
under § 3 of the statute.

An accident resulting from conduct of the railroad corporation of the
character above described occurred in November, 1920. At the
trial of an action by an administrator against the railroad corporation
for the causing of conscious suffering and the death of his intestate by
reason of such conduct, it was proper to admit in evidence that part of a
decision by county commissioners in 1916 which instructed the de-
fendant to reconstruct the way and bridge; but it was not proper to
admit preliminary portions of the decision which recited the history
of alleged previous unlawful maintenance of the way and bridge.

Where, at the trial of the action above described, it appeared that when
injured the plaintiff's intestate was in a Ford automobile and the de-
fendant was permitted to inquire at length of a witness concerning the
condition of the automobile on the day of the accident, it was proper
to exclude further evidence offered by the defendant as to the con-
struction of a Ford automobile.

At the trial of the action above described, the defendant properly might
have been permitted to show that, as bearing on the question of its
culpability, in 1916 it had brought a petition for a writ of certiorari
to test the validity of the decree of the county commissioners which
was pending until decided by the full court in 1921; that a receivership
for the defendant's railroad was decreed in August, 1916, and ended
in November, 1919; and that Federal control of the railroad began in
1918 and ended in February, 1920.

While the plaintiff, to recover in the action above described, was required
to show that the alleged defect in the highway or railing was the sole
cause of the injury, and requests by the defendant to that effect well
might have been given, it was *held,* that, although the defendant con-
tended that the injury was caused in part by a defective condition of

the plaintiff's automobile, the defendant was not harmed by a refusal to grant such requests, since all the evidence tended to show that the automobile was not defective.

TORT for conscious suffering and the death of Arthur L. Conary, the plaintiff's intestate, with a declaration in four counts, the first and second counts being for conscious suffering, and the third and fourth counts for the causing of the death of the plaintiff's intestate. In the first and fourth counts, the cause of action was set out as "a defect and want of repair and . . . want of a sufficient railing in and upon . . . the main road leading from the village of Reading to the city of Lowell . . . which [the] defendant was at that time obliged by law to repair"; and in the second and third counts the cause of action was alleged to be "an illegal and careless obstruction of said highway, which illegal and careless obstruction the defendant was then maintaining in that portion of said highway which was included in and about a certain bridge over the tracks of the defendant railway and in and about the approaches to said bridge." Writ dated November 7, 1921.

In the Superior Court, the action was tried before *Raymond,* J. The plaintiff offered in evidence a decree of the county commissioners dated January 1,. 1916, which, after reciting that it was upon a petition of the selectmen of Reading "that a decree may be made prescribing the repairs which shall be made by the Boston and Maine Railroad Company at the bridge at the crossing of Lowell Street in said town with the said railroad," recited proceedings in a hearing on the petition, and a finding "that it does not appear that any decree was made by any competent public authority at the time said bridge was built in 1845 authorizing its construction in the manner in which it was constructed; that the narrowing of said public way by said bridge was wholly unauthorized; that by reason of such unauthorized narrowing said way at said bridge is now some thirty-eight (38) feet less in width than its legal location; that it therefore appears that the said railroad does not cross said public way so as not to obstruct it, but on the contrary the construction and operation of said railroad as carried out and

maintained constitutes an unlawful obstruction of said way, and has been and is an unnecessary interference with public travel thereon; and that no decree of any competent tribunal has ever been obtained authorizing or legalizing such obstruction." The decree also recited other findings relating to other proceedings before the petition under consideration, and concluded as follows: "Since 1845 and more especially since 1895, the travel on said Lowell Street and over said bridge has greatly increased, so that the present width of said bridge [about twenty feet] is and long has been entirely inadequate to meet the requirements of public travel, and on occasions a serious and dangerous interference therewith.

"And to the end that said unlawful obstruction of said way shall cease, the Commissioners do now make this decree prescribing what repairs shall be made by the respondent at said crossing and the time within which they shall be made, and do further order that the respondent pay the costs of this application and of said repairs. The repairs herein ordered to be made are wholly within the established limits of the said way.

"Said bridge shall be reconstructed so as to be thirty-five (35) feet in width in the clear, with its center line on the center line of the location of the said way. The abutments shall be extended with stone or concrete masonry and so changed as to adequately support said bridge. The said bridge shall consist of steel girders or trusses and floor beams and it may have wooden stringers and floor planking. The structure shall be constructed to conform to specifications for Bridges carrying electric railways, adopted by the Massachusetts Public Service Commission, Revised March, 1915, Lewis E. Moore, Bridge and Signal Engineer.

"The approaches to said bridge shall be graded for a distance of one hundred (100) feet from the abutment of said bridge on the easterly approach to conform to the bridge above ordered, and for a distance on the northwesterly approach such that the resultant rate of grade on said approach shall not exceed five (5) feet in one hundred feet, measured from the center of the northwesterly end of said bridge as above ordered.

"Guard rails such as are usually erected on state highways shall be erected at all steep and dangerous places. The width of said approaches shall conform to the width of the bridge. The banks at the sides shall be sloped at a rate of one and one-half horizontal to one vertical or retaining walls built to sustain said banks, if the slopes go beyond the limits of the highway location; provided however, that if proper arrangements can be made with abutting land owners, sloping may extend outside of said location.

"The said approaches shall be gravelled to a depth of at least six (6) inches with good binding road gravel free as possible from loam or clay, with no stone over 3 inches in size in its longest dimensions, which gravel shall be carefully spread, rolled and compacted so as to present a finished, smooth surface properly crowned.

"The said repairs shall be completed before June 1, 1916."

There was evidence that the defendant made no repairs or improvements of any kind from 1915 to the date of the accident to the plaintiff's intestate, November 15, 1920.

Other material evidence and exceptions by the defendant to evidence are described in the opinion. At the close of the evidence, the defendant moved for a verdict in its favor. The motion was denied. The defendant also, among others, asked for the following rulings:

"5. If the jury are in doubt as to whether or not a defective condition of the highway was the sole cause of the accident, the plaintiff cannot recover.

"6. If the jury are in doubt as to whether or not the accident was caused in whole or in part by a defective condition of the highway, the plaintiff cannot recover."

"12. If the jury find that the defendant is liable to the plaintiff in this action, the damages for the death case are to be assessed according to the degree of its culpability, under the provisions of G. L. c. 229, § 1.

"13. Assessment of damages for the death case is to be greater or smaller within the prescribed maximum of one thousand dollars according to the degree of blame which attaches to the defendant and not according to the loss sustained by the next of kin of the deceased."

The jury found for the plaintiff in the sum of $500 "on the first and second counts in the declaration" and in the sum of $5,000 "on the third and fourth counts in the declaration." The defendant alleged exceptions.

*J. M. O'Donoghue,* for the defendant.

*C. H. Waterman,* for the plaintiff.

CARROLL, J. The plaintiff is the administratrix of the estate of Arthur L. Conary. The action is in tort to recover damages for his conscious suffering and death resulting from an accident which occurred November 15, 1920, in the town of Reading, where Lowell Street crosses the defendant's tracks by an overhead bridge. The intestate was operating a Ford automobile. As he was travelling on the incline leading to the bridge, one of the front wheels went into a depression in the surface of the way. The automobile turned and went through a wooden fence on to the railroad location. The intestate was injured and died November 18, 1920. The plaintiff recovered a verdict of $500 on the count for conscious suffering, and $5,000 on the death count.

The defendant requested the trial judge to rule that, if it were liable, damages for the death were to be assessed under G. L. c. 229, § 1. This was refused. The plaintiff contended that damages were to be assessed under G. L. c. 229, § 3. Section 1, so far as material, provides that, if the life of a person is lost by reason of a defect or want of repair in or upon a way or bridge, the "person by law obliged to repair the same shall . . . be liable in damages not exceeding one thousand dollars." Under § 3, so far as material to this case, it is provided, "If a corporation operating a railroad . . . by reason of its negligence . . . while engaged in its business, causes the death of a . . . person in the exercise of due care who is not a passenger . . . , shall . . . be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars, to be assessed with reference to the degree of culpability of the corporation or of its servants or agents, which shall be recovered in an action of tort . . . ." The defendant was the "person by law obliged to repair" the way. The procedure under the statute to recover against a railroad corporation, if it were obliged to keep the way in

repair, would be the same as the procedure against a munici-
pality obliged by law to keep the highway in repair. Notice
to the defendant, as required by the statute, would be a
condition precedent to recovery. *Dickie* v. *Boston & Albany
Railroad,* 131 Mass. 516. *Mack* v. *Boston & Albany Railroad,*
164 Mass. 393. If the way were required to be kept in repair
by the town, damages would be assessed under § 1, and we
know of no reason why the same rule should not be applied
where the defendant was charged with the duty of repair.
The injury resulted from the defendant's neglect of its
statutory duty to keep the way in a reasonably safe condition
for travel. It did not result from the negligence of the de-
fendant in the operation of its business as a carrier of passen-
gers and goods. In *Charles* v. *Boston Elevated Railway,* 230
Mass. 536, the death of the passenger resulted from the
negligence of the defendant in transporting its passengers.
See also *Commonwealth* v. *Boston & Lowell Railroad,* 126
Mass. 61; *Daley* v. *Boston & Albany Railroad,* 147 Mass.
101, 112, 113; *Brooks* v. *Fitchburg & Leominster Street Rail-
way,* 200 Mass. 8. We find nothing in *Parker* v. *Boston &
Maine Railroad,* 3 Cush. 107, and *White* v. *Quincy,* 97 Mass.
430, to the contrary. The request of the defendant that
damages must be assessed under the highway statute should
have been given.

During the progress of the trial, the plaintiff was permitted
to introduce in evidence, against the defendant's exception,
a petition of the selectmen of the town of Reading to the
county commissioners for a decree "prescribing what repairs
shall be made by the corporation at the crossing, the time
within which they shall be made, together with such other
orders as public convenience and necessity may require,"
and a decree of the county commissioners made on January 1,
1916, upon that petition. The defendant "objected to the
admission of the record" of the proceedings and to each and
every part thereof stating that the recital of the history and
any part of it other than the order directing the defendant
what to do was immaterial, and further that the order
itself was immaterial on the ground that the width of the
bridge did not enter into the cause of the accident." As

there must be a new trial of this case, we consider this exception.   The decree contains, beside an order to the defendant to reconstruct and widen the bridge, neglect to perform which, the plaintiff contended, resulted in the injury and death of the plaintiff's intestate, long preliminary statements reciting the history of the way and of other proceedings relating to it beginning in 1845.   These preliminary statements should not have been read to the jury.   They did not relate to the defendant's breach of duty in 1920 and did not bear on the question of the defendant's culpability for the injury to the plaintiff's intestate.

The plaintiff also introduced certain evidence concerning the original layout of the highway.   This evidence might properly have been excluded.   The defendant's liability rested on its neglect to comply with the decree of the county commissioners made in 1916.   Conditions prior to that time were not material and had no tendency to establish the defendant's neglect to comply with the duty imposed upon it by the more recent decree of the commissioners.

The defendant offered certain evidence as to the construction of a Ford automobile, which was excluded.   The defendant fully interrogated the witness concerning the condition of the automobile on the day of the accident.   There was nothing indicating any defect in it.   This evidence was properly excluded.

The defendant offered to show that in 1916 it had brought a petition of certiorari to test the validity of the order of the county commissioners, which was pending until decided by the full court in 1921; that a receivership was decreed for the Boston and Maine Railroad in August, 1916, and ended in November, 1919; and that Federal control of the railroad began in 1918 and ended in February, 1920.   The damages under this statute were to be assessed with reference to the defendant's degree of culpability.   The facts contained in the offer might affect the question of the defendant's culpability.   They might properly have been considered by the jury on this question and such weight given them as the jury thought appropriate.

To recover under the highway statute, the defect must be

the sole cause of the injury. *Feeley* v. *Melrose,* 205 Mass. 329, 333. *Igo* v. *Cambridge,* 208 Mass. 571, 575. The requests of the defendant to this effect might well have been given; but we do not think the defendant was harmed by the refusal, for the reason that all the evidence tended to show that the automobile was not defective.

We have considered all the exceptions argued by the defendant. For the reasons stated, the order must be

*Exceptions sustained.*