THE TEXAS & ST. LOUIS R. R. CO. v. W. C. ROBARDS ET AL.

(Case No. 132.)

1. SEPARATE PROPERTY — HUSBAND AND WIFE.— Though the statute gives the husband the sole management and control of the wife's separate property during coverture, this will not authorize him to control or incumber her real estate except her consent be given in the mode prescribed by the statute, though he can, it would seem, invest her money in the purchase of property and in the erection of buildings thereon.

2. SAME.— A railway company which stipulated by contract with the husband for certain special benefits to accrue to him in consideration that he should erect a hotel at a depot upon property owned by the wife, cannot, after the husband has complied with his part of the contract, avoid compliance on its part, by asserting the coverture of the wife and the absence of her assent to the contract in the manner pointed out by the statute.

3. RAILWAY COMPANY — CONTRACT.— Where a contract is made with the president of a railway company, and signed by him and the secretary, though not authorized by the directors, yet it appears that they knew of it, and, making no objection, stood by and saw the other party performing his part of the same, the company is bound.

4. SAME.— A railway company may bind itself to maintain a permanent depot at a particular place.

5. Same.— A contract made by a railway company for the building of a hotel by another at its depot, in consideration of which it agreed to encourage the proprietors of the hotel with the patronage of the company, and to dissuade all other parties from erecting a hotel at that depot, is not a contract in restraint of trade nor beyond the power of the corporation.

Appeal from Smith.  Tried below before the Hon. John C. Robertson.

This suit was brought by W. C. Robards and Mrs. S. A. Cain, joined by her husband, W. G. Cain, to recover damages for breach of contract, which was as alleged in substance as follows, to wit: That Robards and Cain were to build at Ferguson, in Upshur county, Texas, and at that time the terminus of defendant company's road and its junction with the Texas & Pacific Railway, a hotel of certain dimensions, which they were to keep open as a hotel and in first-class style, in consideration of which the defendant company was to convey to them nine town lots in the town of Ferguson, to erect at said terminus and junction and perpetually maintain both passenger and freight depots, to encourage the proprietors of said hotel with the patronage of the company and to dissuade all other parties from erecting like buildings (hotels) at that point.

Defendant interposed general and special exceptions, to the effect that said contract was void because one of the parties thereto was a married woman, and also because it was *ultra vires* as to defendant company; that it was against public policy, in that it was to locate and perpetually maintain a depot at a particular place, and in that it was in restraint of trade: which exceptions, general and special, were overruled.  It was alleged that the contract was made on the 22d day of March, 1877, and that as to S. A. Cain it was built out of her separate estate, and that she entered into the contract by and with the consent of her husband.

On trial of the case judgment was rendered in favor of the plaintiffs for the sum of $1,893.31, which was afterwards reduced to $1,847.06.

The several errors assigned are noticed in the opinion.

*Hubbard, Whitaker & Bonner,* for appellant, on the invalidity of the contract on account of the coverture of Mrs. Cain, cited: Hart. Dig., arts. 2421, 2423; R. S., art. 1206; 1 Minor's Inst., 324–25, 337–38; 2 Minor's Inst., 787, 1*q;* 784–85, 2*p;* Kavanaugh *v.* Brown, 1 Tex., 481; Magee *v.* White, 23 Tex., 180; Rhodes *v.* Gibbs, 39 Tex., 444; Trimble *v.* Miller, 24 Tex., 214; Lynch *v.* Elkes, 21 Tex., 229; Covingtons *v.* Burleson, 28 Tex., 368; Wells on Sep. Prop. Married Women, secs. 335, 336; 2 Bishop on Married Women, 232.

On the position that the contract was against public policy they cited: Pierce on Railroads, 513; Holliday *v.* Patterson, 2 Cent. Law Jour., 63; also 18 Am. R'y Rep., 260; Williamson *v.* C., R. I. & P. R. R. Co., 1 Ohio Law J., 502; also 22 Alb. Law Jour., 29, and 37 Chicago Legal News, 373 (this case is referred to by Mr. Pierce); Field's Ultra Vires, 58, note at bottom of page; Morawetz on Private Corporations, § 495, and authorities cited.

On *ultra vires* they cited: Pierce *v.* R. R. Co., 21 How., 441; Davis *v.* Old Colony R. R. Co., 3 Am. & Eng. R. R. Cas., 543; Green's Brice's Ultra Vires, 37, 72, note; p. 434, note; Thomas *v.* R. R. Co., Field's Ultra Vires, 41; also 56 and 57; R. S., art. 4216; Morawetz on Private Corporations, § 209, and authorities cited; Hood *v.* R. R. Co., Field's Ultra Vires, 103, 108.

*Herendon & Cain,* for appellees, on the capacity of the husband to contract, cited: R. S., arts. 2854, 2855; Kavanaugh *v.* Brown, 1 Tex., 484; Callahan *v.* Patterson, 4 Tex., 68; Cartwright *v.* Hollis, 5 Tex., 155; Haynes *v.* Stovall, 23 Tex., 627; George *v.* Stevens, 31 Tex., 673; Smotridge *v.* Lovell, 35 Tex., 59; Hall *v.* Dotson, 55 Tex., 520; Harris *v.* Williams, 44 Tex., 124.

On the validity of the contract they cited: Field on Corporations, secs. 259–266, and note 2 under 266; San Antonio *v.* Lewis, 9 Tex., 69; Bradley *v.* Bullard, 55 Ill., 417; 9 Cal., 453; De Graff *v.* American, etc., Co., 21 N. Y., 127. See full conclusions in Field on Corporations, 309, 310; Green's Brice's Ultra Vires, p. 42, sec. VII; id., pp. 65, 784.

WATTS, J. COM. APP.— This is an action for the recovery of damages resulting from a breach of contract. It is claimed that Mrs. Cain was a married woman at the time of its execution, and, as it was not privily acknowledged by her, that no recovery can be had for a failure to perform upon the part of the company.

Cain, who was acting for his wife and as agent in the management of her separate estate, together with Robards entered into the agreement with the company in reference to building the hotel. The object and purpose of the contract was not the conveyance or disposition of Mrs. Cain's separate estate, but the investment of her separate property for the benefit of that estate. Our statute gives the husband the sole management of the wife's separate property during coverture. While this would not authorize him to convey or incumber her real estate, without her consent given in the mode prescribed by law, certainly he has the authority to invest her money

in the purchase of property and in the erection of buildings, as this would be for the benefit of her separate estate. And it would seem to follow that he would be authorized in the management of her estate to make valid and binding contracts to secure the erection of buildings, etc. His failure to comply with such contracts might not result in binding her separate property; still, as he has a substantial interest in the rents and revenues arising therefrom, it might be that he would render himself personally liable for a failure to perform the contract. But in this case it is not necessary to express an authoritative opinion upon either of these points. Nor is it thought necessary to determine the scope of the power conferred by the statute upon the husband in the management of the wife's separate property. For both from the evidence and finding of the court it appears that appellees had performed their part of the contract. Then it would seem to follow, that, as the company had received the benefit of a performance upon the part of Mrs. Cain, it would not be hard to assert her coverture as a defense to the action and as justification for a refusal on its part to perform the contract. Any other doctrine would result in converting a rule of protection into an engine of destruction. It is for the protection of married women that the rule of inability to contract exists, and not for those who, knowing of the coverture, contract with them, and, after securing the benefits of a performance on their part, would refuse performance on the ground of that coverture.

In cases of specific performance of contracts, under some circumstances, the want of mutuality in the contract may be waived by the conduct of the person against whom the contract could not originally have been enforced. And it is said that "where, from the relation of the parties to one another, the contract is originally binding on the one and not on the other, the latter may by suit waive the want of mutuality and enforce the specific performance of the contract." Fry on Specific Performance, etc., 201.

Here the company has received the benefit of a performance, that is, the consideration for its own promises, and therefore has no grounds for a suit against appellees, for they have already voluntarily performed their stipulations. Then there is no good reason for holding that the company may assert the incapacity of Mrs. Cain to maintain a suit that she had no occasion to ever institute. And in addition to these considerations, the record shows that the appellant afterwards recognized the contract as subsisting and binding, and in part performance thereof voluntarily conveyed the lots to appellees. Under these circumstances we are of the opinion that the defense

of Mrs. Cain's coverture cannot be made available by the appellant.

There is nothing in the proposition that the contract was not properly executed by the company. Section 11 of the by-laws is as follows: "All contracts or instruments of writing made or entered into by the company shall be signed by the president and secretary, and sealed with the seal of the company." It appears that this contract was executed in accordance with that section. And while it is not made to appear that it was authorized by the directors, it is shown that they all knew the facts, and made no objection to the contract, but stood by and permitted the appellees to perform the same. By such silence they will be considered as having acquiesced in the contract.

The point is also made that the contract is against public policy and therefore void. This objection is based upon two distinct grounds: First, the company cannot bind itself to keep and maintain a station at any particular point on its line; secondly, the contract is in restraint of trade, for by its terms the company is bound to patronize the hotel to be constructed by appellees, and to discourage the building of others at that place.

It should be observed that the contract stipulates for the continuance of the town of Ferguson as a permanent station on the road, and for the erection of freight and passenger depots at that place.

There is nothing in the terms of the contract that would prohibit the company from establishing other stations on the line wherever the public interest might demand, or the management might think proper to do so. There are authorities to the effect that a railroad company cannot bind itself by contract to establish and maintain a station at any particular point on the line. That such a contract is against public policy and void. Other authorities, upon better reasons, hold that such contracts are not against public policy, unless the company thereby undertakes to bind itself not to establish other stations in the same vicinity or elsewhere on the line as the convenience of the public might demand. Williamson v. C., R. I. & P. R. R. Co., Ohio Law Journal, vol. 1, No. 49, p. 502; Holliday v. Patterson, 5 Oreg., 177; also reported in 18 Am. R'y Rep., 260; Martindale v. Kansas City, etc., R. R. Co., 60 Mo., 510; Currier v. Railroad Co., 48 N. H., 326; Kinealy v. St. Louis, K. C., etc., R. R. Co., 69 Mo., 658.

Railroad corporations are created with the twofold object of gain to those who engage in such enterprises, and for the accommodation of the public in travel and the shipments of freights; and,

undoubtedly, it would be against public policy to allow them to so contract as to defeat the objects of their creation. This would be the result if they were so permitted to bind themselves that they could not establish stations at any point on the line that trade, travel and public convenience might require. But it is not perceived how it could work an injury to the public for a company to bind itself by contract to permanently maintain a station at any point on the road, provided it includes no prohibition against establishing such other stations as the management might deem necessary and convenient.

Each station not only accommodates those who reside in its vicinity, but also the general public who may desire to leave or board the trains, or ship freights to or from such points. The fact that such contracts might work an inconvenience to the company would afford no reason for holding them to be against public policy. It is the public that must be injuriously affected, to have that effect upon contracts.

These corporations are created with power to contract, and experience has not yet demonstrated any necessity for the courts to assume a sort of guardianship over them, so as to protect them against their improvident contracts. On the contrary, it is generally understood that they are able to deal in close quarters with natural persons in this particular.

The other proposition, that the contract is in restraint of trade, is not, as we think, supported by the record. The company owned the land and had laid out a town with the view of making sales of the lots. To enable them to do so to the best advantage, it seems that the establishment of a hotel at that point was considered highly important, both in promoting the sale of lots and in encouraging travel over the road. To secure this the company held out and proffered the inducements which were embodied in the contract.

An investment in a hotel, at a town in embryo, might not be considered as either safe or desirable; and yet its establishment might be of great importance to the projectors of the town. Then, to accomplish the desired object, it seems to us the contract might go even beyond that which is under consideration, and still not be in restraint of trade.

A further objection to the contract urged by appellant is, that as to it the contract is *ultra vires;* that is, it was beyond the power of the corporation to make such a contract, or, in other words, the authority to make such a contract is not included either in the express or implied powers conferred by law.

There is a distinction between contracts not authorized by law and those that are prohibited by law. The former only are properly denominated by the term *ultra vires*. Notwithstanding this is comparatively a modern doctrine, there are a great number of reported cases in which it has been discussed and applied, and much confusion exists in its application, as will appear by reference to the cases reviewed in Green's Brice's Ultra Vires, p. 729, note " a."

Much of this confusion, perhaps, has been occasioned by the fact that courts of last resort have looked more to reported cases than those under consideration. There are, however, certain well established rules, which, if observed in the application of the doctrine, obviate the confusion and doubt and lead to reasonable certainty. Among these are the following:

*First.* The power of a corporation to contract extends not merely to such subjects as are absolutely essential or indispensable to the performance of specified acts authorized by its charter, but also to such (not being prohibited by law, nor against public policy) as are designed and may be useful in promoting the main enterprise.

*Second.* As between the corporation and strangers, the contract of the former is presumed to be within its power, and the burden is upon the party asserting the contrary to establish the incapacity of the corporation to make the contract.

*Third.* While corporations have no capacity to contract with reference to subjects entirely foreign to the purposes for which they were created, still they are bound by contracts made for purposes which they have treated as being within the object of their charters, and which are not clearly shown not to be included therein. Waterman on Specific Performance of Contracts, § 222; Pierce on Railroads, 499, etc.; Indianola *v.* G., W. T. & P. R'y, 56 Tex., 602, etc.

Then, applying these rules to the contract under consideration, does it appear to be beyond the power of the corporation? The prime object for its creation was the construction and operation of a railroad between the *termini* designated; this was the specified object and directly authorized by the charter. The law also expressly authorized the company to receive donations of land, and not only authorized, but required, that it should be sold and conveyed if not necessary for the operation of the road. It appears that the company had in some way or another secured the title to the land upon which the town of Ferguson had been located, and as it was not necessary to the operation of the road, the company desired to sell it to the best advantage. Any contract, therefore, not prohibited by law, nor against public policy, which would aid

the sale of the land at an advanced price, would result in promoting the main enterprise. The design of the contract was to increase the travel and business on the road and to enhance the value of the lots, and thereby promote the construction and operation of the road. The purposes of this contract were treated by the company as within the objects of its charter. And it has failed to clearly show that such object was not included in the implied powers resulting from those directly conferred. This leads to the conclusion that the contract is not *ultra vires*.

In the case of Railway Co. *v.* McCarthy, 96 U. S., 258, it was truly said, "The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail when it would defeat the ends of justice or work a legal wrong." While it is said in Waterman on Specific Performance, etc., § 226, that "It is now settled that a corporation cannot avail itself of the defense of *ultra vires* when the contract has been in good faith fully performed by the other party and the corporation has had the full benefit of the performance and of the contract."

Here appellees had performed their part of the contract; the hotel was completed and kept in operation until it was apparent that the company did not intend to further perform its contract than to convey the lots. Therefore, to allow the defense of *ultra vires* to prevail against them would be to defeat the ends of justice and work a legal wrong. The evidence as to the destruction of the contract was sufficient to authorize the admission of secondary evidence of its contents.

Nor do the recitals in the conveyance from the company to appellees estop the latter from alleging and showing the real contract entered into by the parties. Suppose the original contract had been produced, would it be claimed that it did not evidence the contract, rather than the recitals contained in the conveyance? The fact that the contents of the original contract had to be shown would not change the result.

Our report is for an affirmance of the judgment.

AFFIRMED.

[Opinion adopted December 18, 1883.]