## Missouri, Kansas & Texas Railway Company of Texas v. Annie Freeman et al.

### No. 1248. Decided March 7, 1904.

**1.—Injuries Resulting in Death—Carrier—Act of Servant.**

Under articles 3017, 3018, Revised Statutes, a common carrier is not responsible for death caused by the negligence or unskillfulness of its servant in matters unconnected with the business of conveying goods or passengers. (Pp. 399, 400.)

**2.—Same—Railway Hospital—Communication of Smallpox.**

A railway company maintained a hospital and provided medical treatment for sick or injured employes, in which one sent there for treatment became infected with smallpox, developing and communicated to others after his return; whereupon he, with such others, was placed in a pest camp under charge of a surgeon of the company; the surgeon employed an incompetent attendant who, visiting the neighboring town without precautions for disinfection, communicated the disease to a third party, who died in consequence. Held, that no action could be maintained against the railway company in favor of the family of the deceased for injury resulting from his death by such negligence,—there being no negligence on the part of the corporation itself, and that of the servant being in a business not pertaining to its office as a carrier. . (Brown, J., dissenting.) (Pp. 396-401.)

**3.—Same—Cases Distinguished.**

Missouri K. & T. Ry. Co. v. Wood, 95 Texas, 223, and Lipscomb v. Houston & T. C. Ry. Co., 95 Texas, 5, distinguished from this case. (Pp. 401, 402, 411.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

Annie Freeman and others sued the railway company and recovered judgment, which was affirmed on appeal, whereupon the company obtained writ of error.

*T. S. Miller* and *Perkins, Craddock & Wall,* for plaintiff in error.— The Court of Civil Appeals erred in overruling and in not sustaining the first contention made by the plaintiff in error, which was presented as fundamental error in said court, to the effect that under the statute of this State a railway company is not liable for injuries resulting in death caused by the negligence of its agents or servants unless the injuries so resulting were brought about in some way in the operation of the railway company in its capacity as a carrier of goods and passengers; and that an action for injuries resulting in death is given against railroad companies, when caused by negligence or carelessness of their agents and servants, because and only because of the hazardous nature of the railway business in the machinery and methods used by them in the carriage of goods and passengers; and the said Court of Civil Appeals erred in affirming and in not reversing the said judgment and rendering judgment in favor of plaintiff in error upon its said claim and contention of said fundamental error. Louisville S. V. & T. Co. v. Louisville & N. Ry. Co., 48 Am. and Eng. R. R. Cases, 1; Missouri K. & T. Ry. Co. v. Medaris, 12 Am. and Eng. R. R. Cases (N. S.), 698; Ney v. D. & S. C. Ry. Co., 20 Iowa, 347; Deepe v. Chicago R. I. & P. Ry. Co., 36 Iowa, 52; Lavallee v. St. Paul M. & M. Ry. Co., 40 Minn., 249, 41 N. W. Rep., 974; Luce v. Chicago St. P. M. & O. Ry. Co., 24 N. W. Rep., 600; Matson v. Chicago R. I. & P. Ry. Co., 25 N. W. Rep., 911; Stroble v. Chicago M. & St. P. Ry. Co., 31 N. W. Rep., 63.

The Court of Civil Appeals erred in their construction of article 3017, Revised Statutes of Texas, giving an action for injuries resulting in death, and in affirming and in not reversing the said judgment and rendering same in favor of the plaintiff in error, and in holding that the plaintiff in error was liable under said statute for injuries resulting in the death of W. A. Freeman caused by the negligence or unfitness of its servants and agents in the operation and maintenance of the hospital department of the plaintiff in error, in the operation and maintenance of which were embraced none of the hazards and dangers incident to the operation of a railway. Same authorities.

Article 3017, Revised Statutes of Texas, under which this suit was brought, as construed by the Court of Civil Appeals in its approval and affirmance of the judgment of the court below, is void as being in contravention of the fourteenth amendment to the Constitution of the United States, in that said statute as so construed and the said judgment denies to railway companies and to the plaintiff in error the equal

protection of the laws. Gulf C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; Smith v. Louisville & N. Ry. Co., 75 Ala., 449.

*Evans & Elder,* for defendant in error.—The first question discussed by appellant in its brief involves the construction of article 3017, Revised Statutes 1895, providing for actions for damages for injuries resulting in death. This question was passed on by both the Court of Civil Appeals for the Fifth District and the Supreme Court in the Wood case. Missouri K. & T. Ry. Co. v. Wood, 68 S. W. Rep., 802; Missouri K. & T. Ry. Co. v. Wood, 66 S. W. Rep., 449; Lipscomb v. Houston & T. C. Ry. Co., 64 S. W. Rep., 922; Waters-Pierce Oil Co. v. Davis, 24 Texas Civ. App., 515.

If this court should adopt the construction of article 3017 contended for by plaintiff in error, still the judgment in this case should be affirmed for the reason that the negligence alleged and proven that caused the death was not the negligence of an agent or servant, but was the corporate neglect of the railway company, in this: it was the duty of the railway company, which it could not delegate to another, to employ a fit, competent and trustworthy servant as nurse and guard, and the charge of negligence alleged and proven was that the railway company was guilty of negligence in the employment of an unfit, incompetent and untrustworthy Mexican as sole guard and nurse of the smallpox camp, who, by reason of his incompetency and irresponsibility, left the camp, went upon the public streets, and communicated the disease to Freeman from which he died. Galveston H. & S. A. Ry. Co. v. Farmer, 73 Texas, 85; Langtry Sons v. Lowrey, 58 S. W. Rep., 837; Pittsburg C. & St. L. Ry. Co. v. Shields, 8 Law. Rep. Ann., 464; Wood Mast. and Serv., secs. 282, 283; 1 Thomp. Neg., sec. 529; Waters-Pierce Oil Co. v. Davis, 24 Texas Civ. App., 515; Texas & P. Ry. Co. v. Mallon, 65 Texas, 115; Hilts v. Chicago & G. T. Ry. Co., 55 Mich., 437, 41 Law. Rep. Ann., 47, note; Davis v. Detroit & M. Ry. Co., 20 Mich, 105, 41 Law. Rep. Ann., 47, note; Huntsinger v. Trexler, 181 Pa., 497, 41 Law. Rep. Ann., 47, note; Postal Tel. Cable Co. v. Coote, 57 S. W. Rep., 912; Campbell v. Cook, 86 Texas, 633; Lipscomb v. Houston & T. C. Ry. Co., 95 Texas, 5; Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 10; Indianapolis & St. L. Ry. Co. v. Herrick, 127 U. S., 210-212; Missouri K. & T. Ry. Co. v. Freeman, 73 S. W. Rep., 542.

WILLIAMS, Associate Justice.—W. A. Freeman died from smallpox alleged to have been communicated to him by the negligence of the railway company, its servants and agents, and this action was brought by the defendants in error to recover damages for such death, and was prosecuted to the judgment brought in review by this writ of error.

It appears from the facts found by the Court of Civil Appeals that this railway company had agreed with its employes, in consideration of a monthly sum contributed out of their wages, to furnish them, when

sick or injured, surgical and medical attention. In conjunction, it and a connecting carrier, the Missouri, Kansas & Texas Railway Company, a corporation of another State, maintained at Sedalia, Mo., an hospital, in which care was taken of its sick and injured employes. One of its servants, Alonzo Dickson, was injured, and went to this hospital for treatment. There he was brought in contact with persons having small-pox, but left before there was any development of the disease on him, re-turned to Hunt County, Texas, and resumed work for his employer, the plaintiff in error. The smallpox soon made its appearance upon him, and those of its employes intrusted by plaintiff in error with such mat-ters arranged for the detention and treatment of him and other servants similarly affected in a pest camp under the control of a local surgeon in the employment of the company. Upon this surgeon assuming charge, the officials of Greenville having the care of the public health, and who were instituting quarantine measures for the isolation and detention of persons infected with smallpox, relinquished the custody of Dickson to such surgeon and his subordinates. The surgeon employed an incompe-tent and iresponsible person and placed him in charge of Dickson in the camp. This person left the camp without having changed or disinfected his clothing, went upon the streets of Greenville, met Freeman and com-municated to him the disease from which he died. The courts below have found these facts and the further one that, in selecting so unre-liable a person to take care of the sick servants, the surgeon, in charge by authority of the railway company, was guilty of negligence in the performance of the duty assumed, which was the proximate cause of Freeman's death. This, in brief, is the state of facts upon which the judgment rests. A further statement will be found in the opinion of the Court of Civil Appeals, and in the report of the case of Missouri K. & T. Ry. Co. v. Wood, 95 Texas, 223.

The principal question involved is whether or not a right of action for a death thus caused is given by the statute. Right of action for death is given in the following provisions of article 3017, Revised Stat-utes: "1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents.

"2. When the death of any person is caused by the wrongful act, neg-ligence, unskillfulness or default of another."

Article 3018 further provides: "The wrongful act, negligence, care-lessness, unskillfulness or default mentioned in the preceding article must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

This statute was first adopted in 1860, was amended from time to time, revised in 1879 and again in 1895. The amendments do not affect the question before us. In the revision a different arrangement of the

provisions was made and some words were added. As thus revised the statute has received a construction which materially enters into the present discussion. Whether or not the same construction would have been made of the original statute is a question beside the present purpose. The construction spoken of is that expressed in the case of Hendrick v. Walton, 69 Texas, 192, in which it was held that persons generally were not made liable by the second subdivision of the revision for deaths caused by the "wrongful act, negligence, unskillfulness or default" of their servants and agents; from which it follows that the only responsibility for deaths resulting from the misconduct of servants or agents is that declared in the first subdivision against the classes of persons there named. The difference between this statute and Lord Campbell's Act and those of American States adopting its provisions is therefore obvious. Those statutes fix the liability upon all persons without discrimination when the death is caused by "wrongful act, neglect or default," such as would have given a cause of action to the person injured if he had lived, and make all masters and employers responsible for such misconduct of their servants or agents; while ours make none accountable for the misconduct of servants and agents except certain ones classified according to the business in which they are engaged. This is not extended by either article 3018 or the original provision of which it is the revision. It gives no cause of action against anyone not included in article 3017, but gives one against such as are included, when the injury which caused the death would have given one to the person injured had he lived. We think it clear therefore that no liability is shown in this case under the second subdivision of article 3017. Corporations may be responsible for deaths under this provision, but only where they result from "what may be deemed their own wrongful acts or omissions as distinguished from the acts or omissions of their servants or agents." Fleming v. Texas Loan Agency, 87 Texas, 241.

The negligence which, according to the findings, caused the death of Freeman was that of the local surgeon, the agent or servant of the company, in intrusting the pest camp to the care of an unreliable nurse who, by reason of his incompetency, communicated the disease. To make such negligence that of the employer requires the aid of the rule respondeat superior, and this, as we have seen, is eliminated by the statute from this class of actions except to the extent it is made applicable to those falling within the first provision. Without that rule the negligence is to be viewed as merely that of the servant. But it is suggested that the duty of selecting competent nurses was that of the company, and the failure to perform it was its negligence notwithstanding its attempt to assign it to its agent or servant, and that, hence, the death was due to its "negligence, unskillfulness or default." There is a confusion here, resulting from an attempt to bring into consideration a principle of the law of master and servant which does not apply, the person whose death was caused not having been a servant. By the law regulating the relation of master and servant, unless modified by statute,

the master is not responsible to the servant for an injury inflicted by a
fellow servant; but the master is responsible for his own negligence re-
sulting in injury to the servant. It is a duty of the master to the ser-
vant to use care to secure competent and reliable fellow servants, and
an omission to perform that duty is, as to the servant to whom it is due,
the master's omission or neglect, notwithstanding any attempt he may
have made to have it performed by another; and an injury resulting to a
servant from such omission is attributable to the master's negligence.
It may be that the death of a servant thus caused would be one "caused
by the wrongful act, negligence, unskillfulness or default" of the mas-
ter. If so, it would be because the death resulted from a nonperform-
ance by the master of the duty in favor of the servant growing out of
their relation. This, however, is a question not now before us. These
distinctions have no place in determining the liability of a master for
injuries done by the negligence of his servant to a third person not a
servant. For such injuries, other than death, the master is by the com-
mon law made responsible upon the principle, respondeat superior, re-
gardless of any question as to his care in selecting the servant, or as to
the competency or fitness of the servant (3 Thompson Com. on Law of
Neg., sec. 3167); but the Legislature in giving the action for death
has excluded that principle except so far as it is introduced in the first
provision of article 3017. To hold that a death from such neglect of a
servant as that in question, in the management of his master's business,
was caused by the negligence of the master, in the sense of the statute,
would at once make the master responsible for all deaths caused by neg-
ligence of servants or agents. Of course we are speaking only of mere
servants and agents and not of those who act for a corporation in its
corporate capacity. International & G. N. Ry. Co. v. McDonald, 75
Texas, 45; Houston & T. C Ry. Co. v. Cowser, 57 Texas, 306. Plain-
tiff's action must be sustained, if at all, under the provisions of the
first subdivision of article 3017. Its terms, taken literally, create a
right of action against any persons who are the proprietors, owners, etc.,
of any of the species of property named, for deaths caused by the unfit-
ness, negligence or carelessness of their servants or agents, whether or
not such service or agency and the negligence therein and the result-
ing death had any connection with or relation to such ownership. If
this application were given to it, a person who owned a steamboat or
stage-coach, and was also a farmer or merchant, would be liable for a
death caused by the negligence, etc., of his servant or agent in the other
business; or a railroad company which has, as many in this State have,
acquired lands by donation from the State or from individuals, which
are not used in or in any way connected with the business of carrying
goods or passengers, would be responsible for deaths caused by sur-
veyors and other agents and servants employed about such lands, act-
ing in the scope of their employment. If this were so there would be
no reason for the kind of classification made by the statutes under
which liability for conduct of servants and agents depends upon the

ownership of particular kinds of property for a particular purpose. Those who are made accountable are designated as the owners, etc., of properties which are the means used for the conveyance of goods or passengers and the class of persons meant are evidently carriers. It is to be observed that not merely railroad companies or persons operating railroads, as in the statutes of some States, but all persons natural and artificial, who are the owners, etc., of any vehicles of conveyance of the specified kind, are included in the statute. The liability is given against the "owner," as such, and is based upon the ownership, because the properties are employed in the business of conveying goods or passengers. This inclusion of all who bear this relation to such properties, and exclusion of all others, force the conclusion that the nature of the business common to all constitutes the basis and reason for the classification. From this it follows that the servants and agents for whose misconduct liability is created are those engaged in prosecuting, in some way, that business; and as, in law, one person acts as the servant or agent of another only when he acts in the scope of his employment, it follows, also, that the death contemplated by the statute must be caused by the servant while prosecuting the same business. Reasons may be seen why the Legislature may have thought it just and expedient to thus select carriers, as a class, and impose upon them alone, in the conduct of their business, this responsibility; but none could be found for making a farmer or merchant accountable for the acts and omissions of his farm laborers or clerks merely because he happens to be the owner of a steamboat or stage-coach when no such responsibility is laid upon other farmers and merchants. The same rule must determine the liability of all of the class mentioned in the statute, and if that of the owner of one of the other vehicles is to be restricted to those deaths which occur in his business of conveying goods or passengers, it follows that the same limitation exists upon the liability of owners of railroads, the difference in its scope being only in degree, arising from a difference in the extent of its business.

A statute of Kentucky gave a right of action when "the life of any person, not in the employment of a railroad company, shall be lost by reason of the negligence or carelessness of the proprietor or proprietors of any railroad, or by the unfitness or negligence or carelessness of their servants or agents." In the case of Claxton's Admr. v. Lexington, etc., Ry. Co. (13 Bush., 636), it appeared that a corporation owning a railroad also owned and operated a mine connected by spurs with the railroad, and that a person had been killed by a car and by servants employed exclusively in the mining business. The case was held not to come within the statute, the court saying: "The Legislature has seen proper to invest this company with a twofold character. For the purpose of constructing and operating a line of railway, it is a railroad company; but for the purpose of mining, and of delivering the products of its mines on the line of the railway for shipment, it is a mining com-

pany; and the tramways and cars in use at the time the alleged negligent killing was done, are the usual and necessary attachments to mining operations, and were in no sense incidents to the railroad owned by the appellee. The agents and servants in charge of the tramway were engaged in mining operations, and not in managing, controlling or operating the company's railway. It follows, therefore, that while the appellant is able to bring his case within the letter of the section in question, it is evidently a case not contemplated by its provisions. There is no more reason why the appellee should be compelled to answer, as the proprietor of a railroad, for an injury caused by the negligent management of a tramway attached to its mines, than that it should be required to answer for the death of a party resulting from the negligence of its agents or servants while engaged in prospecting for coal, iron, or other minerals on some of its lands wholly disconnected from and not even bordering on its line of railway." See, also, Aiken v. Western R. R. Co., 20 N. Y., 376.

It will be seen that the statute here construed declared the liability against the proprietors of railroads in terms as broad as those used in our statutes with reference to the classes made liable for deaths.

In the cases of Daley v. Boston, etc., R. R. Co., 147 Mass., 113, and Commonwealth v. Boston, etc., R. R. Co., 126 Mass., 68, the statute of Massachusetts, the language of which is similar to but somewhat more definite than ours, was considered, and the actions were sustained, because, in the first named case, the death occurred in "railroad operations," and in the second, upon a track used by the railroad company which was "reasonably incident to the business in which the corporation was lawfully engaged." In the Daley case the court uses this language: "The words 'operating a railroad' describe the kind of corporation intended to be subjected to the liability there imposed, and not the work immediately in the process of performance by it. Even if they could be held to limit the liability to occasions where the railroads are being actually operated, they would not limit it to incidents occasioned by locomotives, moving trains, etc., or only upon its tracks. The handling of freight, the unloading and loading of its cars, or the transfer, as in the case at bar, of freight from a vessel to its cars, are railroad operations." The decisions in these cases hold the companies responsible for deaths which were caused in connection with the business of railroading and are not authority for a more extensive liability. The intimation that such a company is made liable, merely because it is such, for deaths that may occur entirely outside of and disconnected with its business as a railroad company, if that is the meaning of the opinion, was an obiter dictum, and, in our opinion, is not supported by the true construction of the statute. On the other hand, we regard it as equally clear that the court was right in saying that statutes like that of Massachusetts and Texas can not be so construed as to limit the liability for deaths to such as are occasioned by locomotives, moving trains, etc.,

or only upon the tracks of the railroad. Lipscomb v. Houston & T. 'C. R. R. Co., 95 Texas, 5.

We are thus brought to the question whether or not the business in which the surgeon was engaged, when he was guilty of the negligence assumed to have been the cause of Freeman's death, was such as the statute contemplates. There was a remote connection between the keeping of a pest camp and the railroad business proper, consisting wholly in the fact that the railroad company was engaged in taking care of one of its servants. Servants are, of course, necessary to the prosecution of the railroad business; but contracts and arrangements such as that made by this company with its employes are not essential and not peculiar to that business, but collateral to it. It was not different in its nature from that which would exist between the business of a natural person, owning and operating vehicles for the conveyance of goods and passengers, and a lodging engaged by him for a sick servant in compliance with a contract to take care of servants when ill. If liability for death is imposed upon the railroad company in this case, it would, by the same rule, exist against the natural person in the case supposed for a death caused by his servant in managing such a lodging. It is doubtless to the interest of the railroad companies and commendable in them to have hospitals and similar places for the care of their servants. In a sense, this may be promotive of their business of operating their roads. So they might find it to their interest to have schools of instruction for the training of employes, or libraries and places of resort for the cultivation of correct habits. For the extension of their trade they might think proper to have advertising bureaus and like establishments. Any of these would have some connection with the railroad business, but would be only collateral aids to it. It would be difficult to suppose a business in which a railroad company might engage which would not have some sort of connection with its ownership of its railroad properties; but the statute, as we have seen, makes it responsible not for all deaths which its servants may cause, but for such only as are so caused in its railroad business proper. That business is so comprehensive and embraces so many incidents, essential and nonessential, that an attempt to state a more definite general rule which would include all cases of liability, and exclude all others, would be hazardous. The doctrine of ultra vires would not furnish a solution for all cases. In the case of corporations, it would be easy to suppose instances in which, while acting beyond their lawful powers, they would yet be liable for deaths caused by their servants while so acting; and others in which they would not be liable although the deaths were caused by the default of servants while lawfully prosecuting some collateral undertaking. In the case of individuals the doctrine of ultra vires would, of course, have no application. Railroad companies as legal personages and owners of property, endowed with the power of contracting, may make many contracts and do many things which natural persons may do, but it does not follow that these are properly a railroad

carrying business.   Authorities which hold that such companies may lawfully do this or that thing have, therefore, little tendency to show that the conduct of their servants acting for them therein comes within the purview of this statute.

Without going further into detail, we think it evident that if such a relation as that which existed between this detention camp and the railroad were held to make the keeping of the camp a part of the proper business of the company as owner of the railroad conducting a carrying business, it would be found impracticable to fix a limit at which we could stop short of the broad proposition that such companies and individuals, merely because they own and operate railroads, or some of the vehicles mentioned in the statute, are responsible for all deaths caused by their employes in any business   Such a construction of the statute would, as we have seen, take away all foundation for the discrimination which the Legislature has made between those engaged in the business specified in the statute and other persons and corporations, making the former responsible for deaths occurring in the prosecution of collateral businesses when others engaged in like businesses are not held to a like accountability.   The construction which limits the liability to deaths occurring in connection with the railroad business proper is by no means a narrow or strict one.   On the contrary a much narrower one than we as yet feel inclined to recognize might be put upon the language of the statute.   When the purpose of the Legislature to give such actions only for deaths caused by employes of those engaged in a certain business is so plain the courts have no right to include other cases; and the most liberal construction which, in our opinion, the statute justifies is that which we have indicated.   Any indefiniteness in the rule grows out of the indefiniteness of the statute.   This is no justification for the courts to stretch the statute to cover cases not embraced by it.   Turner v. Cross, 83 Texas, 218.

When our statute was first adopted the railroad business in this State was in its infancy and many of its subsequent extensive developments were unthought of.   Inland transportation was principally carried on by other instrumentalities.   There is nothing in the statutes, or the history of our legislation concerning railroads, to indicate that when the Legislature spoke of "the proprietors, owners," etc., of "a railroad," it regarded as a part of the property specified, or as an incident of it or of the business for which it was employed, any such institutions as those here in question; and our statutes have indicated, with some particularity, too, many, at least, of the things which were regarded as coming properly within the scope of the business of such companies. Rev. Stats., arts., 4367, 4478, 4479, 4480, 4483.   It is not intimated that the specifications of the statute are exclusive of everything not expressly mentioned, the purpose of this reference being to show that nothing in our legislation outlining the powers, rights and duties of railroad companies shows any legislative contemplation of such undertakings as those under consideration as incidents of their business.   In

the case of this plaintiff in error versus Wood, in which questions were certified to this court and answered, there was set up a claim for the death of plaintiffs' child, in addition to personal injuries to plaintiffs not resulting in death. Nothing was said in the certificate concerning the claim for death, and the questions certified were determined by this court wholly upon common law principles governing actions growing out of torts, actionable by that law. When the cause again came before this court upon application for writ of error, the question as to the right to recover for the death of the child, not being fundamental in that case as it is here, was not so presented as to require a determination of it, and it was not in fact determined. The result of that case is not therefore regarded as a precedent to sustain this judgment.

In the Lipscomb case, before referred to, the death for which the railroad company was sought to be made liable was inflicted by a guard alleged to have been employed in its depot for the protection of goods which it held as a carrier. Its duty as such was to safely keep and deliver to its owners goods so held. The business was therefore of the character which the statute defines. That here in question was not.

The plaintiff has no cause of action and the judgment is therefore reversed and the cause dismissed.

*Reversed and dismissed.*

### DISSENTING OPINION.

BROWN, Associate Justice.—A careful study of the opinion of the majority in this case has not brought my mind to a concurrence with the forcible reasoning of my associates nor the construction which they have placed upon article 3017 of the Revised Statutes. The question at issue is of such importance that I must challenge the correctness of the conclusion reached by the majority as to the extent of the railroad's liability, but more especially the soundness of the reasoning by which that conclusion has been reached. It is difficult to define with exactness the point of difference between the majority and myself, but it will be understood from this statement of our respective positions. The majority hold that "contracts and arrangements such as that made by this company with its employes are not essential and not peculiar to that business but collateral to it." I believe that the purposes of the contract by which the railroad company agreed to care for the sick employe and the maintenance of the camp were *reasonably incident* to the ownership of a railroad and to its operation in conveying "freight or passengers" and was a valid exercise of power implied in the grant of its charter, and that the railroad company should be held liable for a death caused by the negligence of an employe engaged in the performance of the contract. Commonwealth v. Boston & L. R. R. Co., 126 Mass., 68.

At common law no right of action existed in favor of the heirs or representatives of a deceased person for injuries which resulted in the

death of such person, and our statute was enacted to correct this defect in the common law.  The existing evil and the object of such statutes is well expressed in the preamble to Lord Campbell's Act (9 and 10 Vict., chap. 93), in this language: "Whereas, no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is oftentimes right and expedient that the wrongdoer in such case should be answerable in damages for the injury so caused by him:  Be it therefore enacted,  *  *  *  that whensoever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."  The statutes of this State upon this subject embody the substance of the English statute.  The differences do not affect the question before us.  The first act was passed by the Legislature of Texas in 1860, the first section of which is in these words: "If the life of any person is lost by reason of the negligence or carelessness of the proprietor or proprietors, owner, charterer or hirer of any railroad, steamboat, stagecoach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, gross negligence or carelessness of their servants or agents, and whensoever the death of a person may be caused by wrongful act, neglect, unskillfulness or default, and the act, neglect, unskillfulness or default is such as would (if death had not ensued) have entitled the party injured to maintain an action for such injury, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as amount in law to a felony."  In 1879 the revisers embodied that section in the Revised Statutes but divided it into articles 2899 and 2900, title 52.  Article 2899 was amended in 1887 so as to omit the word "gross," and again, in 1892, so as to make receivers of railroad companies liable, and as thus amended those articles are embraced in article 3017 and 3018 of the present Revised Statutes.  The commissioners of revision, in 1879, made a report of their work to the Legislature, in which they said of title 52: "This title has been carefully rearranged with reference to existing laws and decisions.  No changes have been made except in the phraseology of the law."  See 2 vol. Sayles' 1st ed. Texas Civil Statutes, 728.  Hendrick v. Walton, 69 Texas, 192, cited by the majority, was decided in 1887, since which time the law has been twice amended without change that affects the question under discussion.  The decision in that case does not bear upon the interpretation of article 3017.  The fact that the law was twice re-

enacted without change shows that the Legislature was content to leave the law in its original form.

The present law, so far as involved in this decision, is embodied in these articles:

"Art. 3017. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad * * * or by the unfitness, negligence or carelessness of their servants or agents."

"Art. 3018. The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

The two articles manifestly constitute a remedial law, which should be construed liberally to effectuate the purpose for which it was enacted. Beech v. Bay State Steamboat Co., 16 Howard's Prac. Rep., 1; Same v. Same, 6 Abbott's Prac. Rep., 420; Haggerty v. Central Ry. Co., 31 N. J. Law, 349. In the last case cited the Supreme Court of New Jersey in commenting upon an act similar to our own said: "The design of the act can not be mistaken. It is entirely and in the highest sense remedial in its nature. Its object was to abolish the harsh and technical rule of the common law—'actio personalis moritur cum persona.' The rule had nothing but prescriptive authority to support it; it was a defect in the law, and this statute was designed to remove that defect. It is therefore entitled to receive the liberal construction which appertains to remedial statutes. The mischief to be redressed was the nonexistence of a remedy for an admitted wrong. It is clearly, therefore, the duty of the court to advance the remedy—which most certainly would not be done by refusing to sustain the present suit."

Article 3268 of the Revised Statutes prescribes the following rule for construction of statutes: "The following rules shall govern in the construction of all civil statutory enactments: * * *

"6. In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

The common law being in force in this State, where it has not been abrogated, we must look to it for an interpretation of the terms of our statute. Suth. Stat. Const., sec. 334; Beach v. Bay State S. Co., 16 How. Prac., 3. In the case last cited the court was construing a statute which imposed a penalty and gave right of action, and said: "With regard to the penal section of the Act of 1849, we can not, by that, construe the remedial section. Each stands by itself on the well known rules of construction; a strict construction for the one, a liberal construction for the other; and in the absence of anything to the contrary, we are to suppose that the Legislature intended that the acts in question

should be interpreted according to those rules, which are part and parcel of the law of the land, recognized by the Legislature as well as by the judiciary; and all laws, it must be presumed, are framed in reference to them." Mr. Sutherland, in section 334, in speaking of the construction of legislative acts, says: "Statutes are not, and can not be, framed to express in words their entire meaning. They are framed like other compositions to be interpreted by the common learning of those to whom they are addressed; especially by the common law, in which it becomes at once enveloped, and which interprets its implications and defines its incidental consequences. That which is implied in a statute is as much a part of it as what is expressed." Guided by these general rules I will give my views of the proper interpretation of our statute.

The first question that arises is, what must be the character of the business pursued by the servant at the time the injury occurs to render the railroad company liable for death resulting from negligence of such servant? which must be determined by construing the language of article 3017: "When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers." The majority opinion limits liability to deaths caused in a business that is "peculiar to the owner of a railroad." I have found no case which bears more directly upon the issue than the following cited by the majority: Commonwealth v. Boston & L. Ry. Co., 126 Mass., 61; Daley v. Boston & A. Ry. Co., 147 Mass., 101; Claxton's Admr. v. Lexington & B. S. Ry. Co., 13 Bush., 636. In the first case cited, a railroad train was being operated upon a spur track, which did not belong to it but was used with the consent of the owner, for the purpose of carrying passengers to the boat wharf and of receiving them from such wharf. It was objected by the defendant in that case that because the injury did not occur upon its railroad track or within the limits of the railroad, which belonged to the company, it was not liable under the statute for the death; but the Supreme Court of Massachusetts held to the contrary, and used this language: "It is apparent that the use of this track was reasonably incident to the business in which the corporation was lawfully engaged." While that was a clear case of liability, the sentence quoted announces the general principle recognized by the authorities, that a corporation may exercise all powers reasonably incident to the powers granted by its charter when used for the purpose of forwarding its business. In the second case cited from Massachusetts, the deceased, a servant of defendant, was working in the hold of a schooner shoveling coal which was hoisted from the schooner and delivered on the wharf of the railroad company and was put upon defendant's cars. Defendant contended that "the business of unloading vessels is that of stevedores and not of railroad corporations, and the negligence alleged was not that of a corporation operating a railroad." The court held that "the words 'operating a

railroad' describes the kind of corporation intended to be subjected to the liability there imposed, and not the work immediately in the process of performance by it." The decision is in response to the defendant's contention and is not obiter dictum as claimed by my brethren. The words "proprietor, owner, charterer or hirer of any railroad," used in our statute, designate the persons to be liable and does not refer to any particular business, except it must be such as pertains to the business of a railroad company, as carriers of freight and passengers.

The gist of the decision in the case of Claxton's Admr. v. Lexington & B. S. R. R. Co., before cited, is expressed in this extract: "The Legislature has seen proper to invest this company with a twofold character. For the purpose of constructing and operating a line of railway, it is a railroad company; but for the purpose of mining, and of delivering the products of its mines on the line of the railway for shipment, it is a mining company; and the tramway and cars in use at the time the alleged negligent killing was done are the usual and necessary attachments to mining operations, and were in no sense incidents to the railroad owned by the appellee. The agents and servants in charge of the tramway were engaged in mining operations, and not in managing, controlling or operating the company's railway." The decision is put upon the ground of the dual character of the corporation; the work being done was not that of the railroad corporation, therefore not within the terms of the statute. The strong implication is that the railroad company would have been held to be liable if the transaction in which the injury occurred had been reasonably *incident* to its business as a railroad company.

The rule of the common law, by which the terms of our statute should be interpreted, is clearly expressed in these cases: Texas & St. L. Ry. Co. v. Robards, 60 Texas, 545; Indianola v. Gulf W. T. & P. Ry. Co., 56 Texas, 544; Madison & Plank R. Co. v. Watertown P. Ry. Co., 5 Wis., 182; Clark v. Farrington, 40 Wis., 339.

In the case of Texas & St. L. Ry. Co. v. Robards, 60 Texas, 545, the power of a railroad company to make a contract for a purpose incidental to its business was involved. The railroad company owned land at the junction of its road with the Texas & Pacific, laid out in lots and streets, which it desired to sell for town purposes. The company entered into a contract with Cain and Robards by which they agreed to erect and run at that place a hotel in first-class style, in consideration of which the railroad company agreed that it would perpetually maintain a depot and station at that particular point. The railroad company moved the depot and station from that place and the party who was to keep the hotel brought suit for damages. The railroad company pleaded that the contract was ultra vires; but our Supreme Court held, that it was within the authority of the corporation to make the contract because it was incident to and proper for the carrying on of its business in connection with the operation of its road and the sale of its town lots.

In delivering the opinion of the court the following propositions are laid down:

"First. The power of a corporation to contract extends not merely to such subjects as are absolutely essential or indispensable to the performance of specified acts authorized by its charter, but also to such (not being prohibited by law, nor against public policy) as are designed and may be useful in promoting the main enterprise.

"Second. As between the corporation and strangers, the contract of the former is presumed to be within its power, and the burden is upon the party asserting the contrary to establish the incapacity of the corporation to make the contract.

"Third. While corporations have no capacity to contract with reference to subjects entirely foreign to the purposes for which they were created, still they are bound by contracts made for purposes which they have treated as being within the object of their charters, and which are not clearly shown not to be included therein. Waterman on Spec. Perf. of Cont., par. 222; Pierce on Railroads, 499, etc.; Indianola v. Gulf W. T. & P. Ry. Co., 56 Texas, 602, etc.

"Then applying these rules to the contract under consideration, does it appear to be beyond the power of the corporation? The prime object for its creation was the construction and operation of a railroad between the termini designated; this was the specified object and directly authorized by the charter. The law also expressly authorized the company to receive donations of land, and not only authorized, but required, that it should be sold and conveyed if not necessary for the operation of the road. It appears that the company had in some way or another secured the title to the land upon which the town of Ferguson had been located, and as it was not necessary to the operation of the road, the company desired to sell it to the best advantage. Any contract, therefore, not prohibited by law, nor against public policy which would aid the sale of the land at an advanced price, would result in promoting the main enterprise. The design of the contract was to increase the travel and business of the road and to enhance the value of the lots, and thereby promote the construction and operation of the road. The purposes of this contract were treated by the company as within the objects of its charter."

Indianola v. Gulf W. T. & P. Ry. Co., 56 Texas, 594, asserts the same propositions of law. The railroad company had bound itself to construct its railroad to Victoria in consideration of a grant of right of way over the streets of Indianola, but failed to build the railroad as agreed, and, to a suit upon its bond, pleaded a want of authority to make it. This court held the road bound and said: "The power of a corporation, in respect to contracts and business dealings, extends not merely to those which are absolutely essential and indispensable to the performance of the specified acts authorized by its charter, but as well to those which, not being prohibited by statute or public policy, are designed and may be useful to promote the main enterprise. The choice

of means which are reasonably promotive of the main purpose is with the corporation; and where different methods stand this test, judicial tribunals will not revise its discretion by holding that the one chosen was not indispensable, and that another might have been more wisely taken," etc.

In Clark v. Farrington, before cited, the Supreme Court of Wisconsin expressed the rule in this language:

"We have, then, two established propositions of law:

"1. A corporation can exercise no powers except those conferred by its charter.

"2. In executing those powers it may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate, unauthorized business."

In the light of these authorities and the absence of anything to the contrary, I claim that the business pursued by the servant at the time of the injury need not be *peculiar* to the "owner, etc., of a railroad," but must be reasonably incident to and used to promote the business of the railroad company as such.

The question upon which this case rests is, was the contract between the Missouri, Kansas & Texas Railway Company of Texas and its servant reasonably incident to the business of conveying passengers and freight? The terms of the contract and the acts of the corporation done in execution of the agreement are sufficiently set out in the main opinion and need not be repeated. Alonzo Dickson was a section-hand upon the railroad of the plaintiff in error, and, having contracted the disease of smallpox, was entitled under that contract to be cared for and treated by and at the expense of the railroad company. If it was within the power of the corporation, *"as the owner of a railroad,"* to make such a contract, then it was valid, otherwise it was not, because the company had no such authority to contract except *as the owner of a railroad*. The court judicially knows what everybody knows, and all know that this railroad employs a great number of persons in the various departments of its business, and that such persons are exposed, in the performance of their duties, to many dangers of injury and disease. The greater number perhaps of such employes are single men and away from home while engaged in their work; if injured or they become sick the result would be that in leaving the service and going to their homes, or other places, for treatment the force would be disorganized and a thorough control of the railroad's force could not be maintained; therefore, it is important to the railroad company to maintain its force in such shape and condition that it can be relied upon at any time, and for that reason the contract would be within the power of the company as a reasonable and proper aid to its business. But there is another important phase of this question, which is, that in cases of injuries to their employes, railroad companies are held liable for damages and for necessary medical and surgical treatment, nursing and the like. It

becomes important, therefore, that those to whom the corporation may
be liable shall be treated skillfully and carefully in order to protect it
from damage which might occur by reason of the fact that the care
taken of them even at home would not be so good as that which would
be furnished in a hospital, maintained by the corporation, provided
with nurses, physicians, and all the necessary appliances. In view of
these facts, I believe that the power to make this contract is as nearly
related to the operation of a railroad as was the contract for the erection
and maintenance of a hotel, to forward the interests of the company
by increasing travel and business and to aid in the sale of its town lots,
which was held to be reasonably incident to the operation of the rail-
road. Indeed, it seems to me that the decision of this court in the case
of Lipscomb v. Railway Company, 95 Texas, 5, fully sustains the liabil-
ity of the corporation under the contract involved in this litigation. In
that case it was held that a servant engaged in guarding a depot build-
ing which belonged to the railroad company was engaged in such busi-
ness as was incident to the ownership and operation of the railroad, and
the railroad company was held liable for a death caused by a negligent
act done in the discharge of the duty of guarding the house. The guard
was engaged in performing the railroad company's implied contract to
safely keep goods committed to its care. Also, while keeping watch over
and nursing the sick servant whose work was to repair the railroad track,
was as near to the operation of the road as he who protected the house
in which freight was stored or passengers received. Ablo was engaged
in performing the railroad company's contract with Dickson which was
made to aid the business of conveying passengers and freight. The sub-
ject of the contract made by plaintiff in error with its servants was not
further removed from the operation of the railroad than the loan of
money by a corporation to contractors who were building a plank road.
Madison W. & M. P. R. Co. v. Watertown & P. Ry. Co., 5 Wis., 173.

I respectfully suggest that the limitation placed by the majority opin-
ion upon the terms of article 3017 is not supported by authority cited
in that opinion, nor by any that I have been able to find. So far as
my investigation has enabled me to discover any cases bearing upon the
question, they are unanimous in the support of the proposition that a
railroad company, as such, is empowered to make all contracts and to
perform all things reasonably incident to the carrying on and promo-
tion of its business in operating the railroad itself. I confidently assert,
that the contract between the Missouri, Kansas & Texas Railway Com-
pany and its employes, for medical and surgical attention and for care
and treatment, is within the power of that corporation, as a railroad
corporation, and is valid. Indeed this court has so held in the case of
Missouri K. & T. Ry. Co. v. Wood, 95 Texas, 223, in which another
phase of the transaction now under investigation was presented, involv-
ing liability to Wood for sickness alleged to have been caused by the neg-
ligence of Ablo, who was then in the discharge of the same duty as when

he did the act charged to have caused the death of Freeman. It was held in that case that the railroad company was liable for the injury occasioned by Ablo's negligence. That decision could not have been rendered except upon the ground that the business in which Ablo was engaged was one the railroad company was authorized to engage in, for at common law, as well as under the statute, a corporation is not liable for injury resulting from the negligence of one who is not at the time engaged in its business, although he may be in its employ. The contract being valid the railroad company could perform it by the use of "any proper and convenient means, not forbidden by law, nor contrary to public policy." Clark v. Farrington, 40 Wis., 340; Texas & St. L. Ry. Co. v. Robards, 60 Texas, 551.

When the Legislature has placed a construction upon its enactments, that construction must be followed by the courts, and for such construction of this law I invite attention to the history of this legislation hereinbefore given. The first section of the Act of 1860, heretofore quoted, defined the liability of railroad companies in cases of death by wrongful acts by this language: "Whenever the death of a person may be caused by wrongful act, negligence, unskillfulness or default, and the act, negligence, unskillfulness or default is such as would (if death had not ensued) have entitled the party injured to maintain an action for such injury, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as amount in law to a felony." Under that act the test to be applied was, could the deceased, if he had not died, have recovered from the railroad company for the injury inflicted; if so, the persons named in the act could recover for the death. The revisers' report to the Legislature construed articles 2899 and 2900 of the Revised Statutes to mean the same as the law of 1860. The Legislature adopted the revision under that construction, hence to ascertain the intention of the Legislature we must construe those articles as if the language were arranged as in the original act, and the intention of the Legislature thus ascertained must prevail. By the terms of the Act of 1860 the proof which would establish a right in Freeman to recover for the injury would prove the right of plaintiffs to recover for his death.

But section 3018, in itself, conveys the same meaning as the first section of the Act of 1860. The language, "The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury," requires that the plaintiff in such case shall prove a state of facts that would entitle the deceased to recover if he were living and plaintiff in the suit. Elliot v. St. Louis & I. M. C. Ry. Co., 67 Mo., 274. The converse of the proposition expressed in section 3018 is, "if the wrongful act, negligence, carelessness, unskillfulness or default mentioned in the

preceding article be of such a character as would, if death had not ensued, entitle the person injured to maintain an action for such injury," then the plaintiffs may recover. The rule of construction which assumes the correctness of the converse of a proposition has been recognized by this court in the case of Palmer v. Wilson, 18 Texas, 592. In that case the validity of a sale under judgment and execution was before the court and Chief Justice Hemphill said: "If, then, the judgment, execution and sale would conclude the plaintiff if he had been sued by the defendant, not only as to all the right he had at the time of the sale, but that prima facie he had some right upon which the judgment and sale could operate, it would seem, e converso, that where the plaintiff (who was defendant in execution) brings the suit against the purchaser (as is the defendant here), and the defendant either offers in evidence his sheriff's deed or gives notice that he will offer it on his behalf, the plaintiff is not required to do more than to show that his right to the land (admitted as this right is by implication from the judgment, levy and sale, and which implication is very strong against the purchaser) did not pass from him by such sale." The argument is equally forcible and legitimate in the construction of the statute now before us; besides, such construction conforms to the law as as it was before the revision and to the intention of the Legislature in adopting the revision.

The most plausible argument adduced in support of the main opinion is stated thus: "Such a construction of the statute would, as we have seen, take away all foundation for the discrimination which the Legislature has made between those engaged in the business specified in the statute and other persons and corporations, making the former responsible for deaths occurring in the prosecution of collateral businesses when others engaged in like businesses are not held to a like accountability." To that proposition I reply, that the liability sought to be fixed upon the railroad company is founded upon the fact that the contract was incidental to and in aid of its business as owner of a railroad engaged in conveying "goods and passengers," and the maintenance of the camp was a means of performing the contract, therefore the discrimination suggested would rest upon the same foundation that supports the statutory classification. A depot building in which freight has been stored either to be transported, or to be delivered after transportation, is, in law, a warehouse of the company. The railroad could not carry on such business disconnected from its business of "conveying goods and passengers." If, in the town of Rice (where the facts of the Lipscomb case occurred), there had been a warehouse maintained by a corporation created for that purpose, and if such corporation had employed a guard, who, under the same facts as in the Lipscomb case, caused the death of another, the warehouse corporation would not be liable under the second clause of our statute as construed by this court. This would produce sharp discrimination against the railroad company's warehouse business, but that would not make the classification invalid; if so, the Lipscomb case was improperly decided. If it should be held

that each business which may be followed by a railroad company or other corporation or person embraced in article 3017, Revised Statutes, which is incidental to and in aid of its main business, must, considered as a separate business, have the same foundation for a discrimination as to its liability as that upon which the classification was made, then it would involve this whole subject in inextricable difficulty. If this statute was susceptible of two constructions, one of which would render the law unconstitutional, and the other would sustain it, then the court should adopt the latter, because the law would presume that the Legislature intends to conform to the Constitution. When, however, the intention of the Legislature is manifest and plain, it must be declared by courts, though the statute fall. Courts take great liberty with words in order to discover the legislative intent, but that intent can not be displaced for any purpose.

From my point of view these objections to the majority opinion present themselves: First. It applies to a remedial statute the most rigid rule of construction, thereby limiting the liability instead of promoting the remedy. Second. In construing the terms of the statute, the rules of the common law are disregarded, its interpretation and limitations are not applied. Third. The opinion does not reflect the manifest intention of the Legislature, but denies relief wherein the lawmakers intended to give it, and acquits the railroad company from liability that the Legislature intended to fix upon it. Fourth. The statute prescribes the plain and simple rule, that the right of the deceased to recover for the injury shall be the standard by which to determine the right of his relatives to recover for his death; but the opinion destroys that rule and affords no safe guide by which to determine the rights of parties in cases like this.